Rossell J.
In this action the defence set up by the defendant, was the will of Susannah Bailey, devising the premises in question to the four children of a deceased sister. And the validity of this will was the whole matter in controversy. The plaintiff alleging that the testator at the time of signing that will, such was the violence of her disease, that the hand of death was heavy on her and rendered her incapable of exercising a sound and disposing mind ; that the supposed will had been written by the defendant and one Joseph Purdy, in the kitchen, according to the contrivance of their own minds and without any consultation with the testatrix, who had never read the will, was incapable of doing so, and that it had never been read to her. To establish these facts, the plaintiff' called a number of witnesses who were present at the time of the execution of the supposed will, and during the time of her extreme illness. The Chief Jus *526 tice charged the jury, who found a verdict for the plaintiff, - with which he declares himself perfectly satisfied.
To this charge of the Chief Justice exceptions are taken, and this motion for a new trial made.
On examining the charge of the Chief Justice, it appears to me to be substantially consistent with the law and the fact. It is true, that so me authorities say, that if a man is so witless that he cannot number twenty, tell his own age, nor know his father or mother, he cannot make a testament. Yet this I apprehend is only putting an extreme case, merely to shew that wills are not lightly to be set aside for incapacity of the testator, though he might rather Uncline to the weak or foolish amongst men ; for the same author continues, “ It is requisite that the testator, when he makes his will, should be of sound memory and competent understanding to dispose of his estate with reason.” Lovelass 139, 140. So in 141-2. The mere acknowledging of a writing by a blind man, that it is his will is not sufficient unless there be .satisfactory proof that the will had been read over to him. The same precautions are requisite in the case of persons who cannot read, or who by sickness are incapacitated to read the will at the time, (a)
In this case there was also an allegation of fraud in imposing a will contrived by others on the testatrix, (b) The whole proof was before the jury; on this proof, under the charge of the .court, they found a verdict for the plaintiff, with which the judge has declared himself perfectly satisfied. And I can see no sufficient reason for disturbing that verdict.
Southard J.
Two reasons have been principally relied on for setting aside this verdict'; misdirection of the court in matter of law, and error in the jury in matter of fact, upon the .weight of evidence.
The objection to the charge of the court applies to that *527 part in which the judge explained the words “sound and disposing mind and memory,” but principally to the definition of the word sound, (a) The cause seemed to turn upon the proper construction and application of those words, and therefore a minute explanation of their meaning was given. In forming our opinion of this reason it is fair, as well as safe, to look through the whole charge, at least so much of it as relates to these terms; its correctness is to be determined by the whole, taken together.
The Chief Justice first explained to the jury the meaning and import of the word sound, by itself: he then tells them, that “ a disposing mind and memory,” is a mind and memory, which have the capacity of recollecting, discerning and feeling the relations, connexions and obligations of family and blood.” And these definitions I take to be accurately true. After explaining the separate meaning of the words in the passage, he connects them together, and, giving their united result, he adds, “If upon the whole, the jury should be of opinion, that the mental powers of the testatrix were so Jar enfeebled and broken, as that she could not make a discreet disposition of her affairs herself, and *that the will in question was devised by oilier persons, and only assented to by her, on being asked, without the power of understanding it, then they ought to find for the plaintiff.” A result more true, could not have boon given; a result more favourable to the defendant ought not to have been desired.
Should it then, even be admitted, that in describing the force of the word sound by itself, too strong a language has been used ; still I do not perceive that it affords good cause for a new trial. The definition of the testamentary capacity taken together, is clear, explicit, and true.
In encountering the second reason^ the counsel for the defendant have no ordinary task to perform. It is common and proper to set aside a verdict, which is clearly and conclusively against the weight of the evidence, and with which the court who tried the cause is dissatisfied. But *528 where the case turns on the opinion which shall be entertained of the testamentary capacity and the court is perfectly satisfied with the verdict, it is seldom, perhaps never found, that a new trial is granted; and such is the present case.
The case presented by the Chief Justice furnishes no proof that the jury has erred; and if we depart from his state of the facts, and look into the evidence, as agreed upon by the parties, the proof is not increased. The counsel for the defendant have stated several points on which they supposed that there had been either a great misapprehension, or a disregard of the evidence; but it is to be remarked, that on each of these points, there was a contradiction between the witnesses. In such circumstances, much, nay every thing must have depended on the character and credibility of the witnesses, and on those matters, of which the jury were the competent and proper judges. I am not, therefore, prepared to say that I find cause for a new trial.
By the whole court:
Let the rule be discharged.

 Suffern vs. Butler, 3 C. E. Gr. 220, 4 C. E. Gr. 202. Hyer vs. Little, 5 C. E. Gr. 443.

 Whitenack vs. Stryker, 1 Gr. Ch. 9. Goble vs. Grant, 2 Gr. Ch. 629. Will of Nancy Maxwell, 4 Hal. Ch. 251. Lynch vs. Clements, 9 C. E. Gr. 431. Hunt vs. Hunt, 2 Beas. 161. Lowe vs. Williamson, 1 Gr. Ch. 82.

 Den vs. Vancleve, post 660. Lowe vs. Williamson, 1 Gr. Ch. 82. Andress vs. Weller, 2 Gr. Ch. 604. Den. Trumbull vs. Gibbons, 2 Zab. 117. Turner vs. Cheeseman, 2 McC. 243. Matter of Vanauken, 2 Stock. 187.